**Samuel WILSON, pro se,**

v.

**William CHANG, M.D.**

**C.A. No. 95–554L.**

United States District Court,
D. Rhode Island.

Feb. 10, 1997.

Samuel Wilson, Cranston, RI, pro se.

J. Renn Olenn, Holly R. Rao, Linda R. Sloan, Olenn & Penza, Warwick, RI, for Defendant.

### MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

Plaintiff, an inmate at the Adult Correctional Institution ("ACI"), brought this Section 1983 case against defendant, a prison doctor, claiming that when defendant injected plaintiff with a sedative after he became disruptive, a violation of plaintiff's constitutional rights occurred.

After a six day jury trial, the jury returned a verdict for defendant. The evidence at trial was largely undisputed as to what occurred at the time and place under consideration. Plaintiff called a host of witnesses who had personal knowledge of the events (and some who didn't) such as correctional officers and other prison personnel, including the defendant. Plaintiff did not offer his version of the events since he elected not to testify, stating that he "didn't want to incriminate himself."

From all the testimony, it is clear what occurred on October 21, 1994, in the prison hospital area of the ACI. Plaintiff flew into a rage when defendant denied him an extra blanket for his cell in segregation. Plaintiff was then restrained by correctional officers and placed in a cell in the back room of the prison hospital near the defendant's office, for observation. Plaintiff was observed for about 15 minutes by defendant, who repeatedly returned to the area, and also by correctional officers. Plaintiff ran about the cell striking his head and other parts of his body against the walls and other objects in the cell. After plaintiff did not respond to defendant's request to calm down, defendant, aware of plaintiff's prior history of mental instability, made the decision to sedate him. Defendant had plaintiff restrained in the cell by correctional officers and injected him in the buttocks with a sedative. A second injection was administered in the same general area to counteract any possible adverse effects of the first injection. Plaintiff, in due time, calmed down and, after a few hours, was returned to his cell in segregation. He suffered no adverse effects or consequences from the injections.

The Court charged the jury in accordance with the principles set forth in *Hogan v. Carter*, 85 F.3d 1113 (4th Cir.) (en banc), *cert. denied*, —— U.S. ——, 117 S.Ct. 408, 136 L.Ed.2d 321 (1996), since there was no First Circuit authority on the subject. The jury was instructed in pertinent part as follows:

"In this case, it is undisputed from all the evidence that the defendant did inject the plaintiff with two drugs at the time and place under consideration. And it is undisputed that he did so intentionally. He intended to do that.

So the real question which is presented to you for your determination is whether those actions caused the loss of a constitutional right to the plaintiff. Now we're really going to get into the meat of what this case is about.

What is the constitutional right involved and what are its parameters?

The plaintiff's claim is under the Due Process clause of the 14th Amendment. That's an amendment to the United States Constitution that was passed shortly after the Civil War. What that amendment provides, with respect to this case, is that the state, any state, shall not deprive a person of life, liberty, or property without due process of law. So this is sometimes referred to as a due process case. Before the plaintiff was injected was he given due process of law?

The United States Supreme Court has held that a person such as the plaintiff, an inmate in an institution, or an ordinary citizen, has a liberty interest under that Due Process clause to be free from the arbitrary administration of medication.

But there is an exception that is recognized by the courts which is sometimes referred to as an emergency exception to this general principle. The rule that I glean from the federal cases in this area is, that a medical doctor is justified in sedating a person, an inmate, in a prison setting by injection if two things obtain. If the doctor has reasonable grounds to believe that the inmate is, and was a danger to himself or others, he may then use reasonably acceptable medical judg-

ment and methods in dealing with that situation.

So, that raises the issues of fact in this case and that's why I have submitted for your determination the two questions that are contained on the interrogatories.

Question 1 is: At the time and place under consideration, did defendant have reasonable grounds to believe that plaintiff was a danger to himself or others? And you'll answer that question yes or no.

Question 2 is: Did the defendant in dealing with the plaintiff in this situation, utilize his medical judgment in a medically acceptable manner? And again the answer is yes or no.

If your answer to both of those questions is yes, then that's the end of the case. Your verdict is for the defendant. No constitutional right has been denied the plaintiff in these circumstances.

If your answer is no to either of those questions, then of course your verdict is for the plaintiff and then you'll have to go on to determine what award to make to the plaintiff for compensatory damages."

Plaintiff took no meaningful objections to that charge. The jury decided for defendant by answering both interrogatories "yes."

The Court ordered the Clerk to enter judgment for the defendant. After the entry of judgment, on November 22, 1996 (the day of the verdict), plaintiff filed a notice of appeal on November 27, 1996, and a spate of motions in an effort to get the jury verdict overturned and to bring this matter to the First Circuit Court of Appeals without cost to him.

It appears that plaintiff seeks to appeal in forma pauperis and desires to have the trial transcript of this civil jury trial provided to him at government expense. Plaintiff has preserved no significant issues of law for appeal, thus, any appeal in this case would be frivolous. Plaintiff's motion for judgment as a matter of law, made just before the case was submitted to the jury and denied, is so far off the mark that it gives plaintiff no grounds for appeal.

Plaintiff, apparently realizing the untenable position in which he had placed himself,

decided to switch courses. On December 11, 1996, he filed a motion for judgment as a matter of law after trial, pursuant to Rule 50(b), and, in the alternative, a motion for a new trial under Rule 59. On December 13, 1996, he filed a request for oral argument on said motions. Although these motions were untimely, the Court heard argument thereon, pursuant to the plaintiff's request, on January 22, 1997. The Court could deny said motions because they are tardy, however, the Court prefers to decide them on the merits and explicate the law on this subject.

Plaintiff's operative theory in this case is that there was, *ipso facto*, a violation of his due process rights since he was injected by the defendant without a prior hearing and without his consent. In so arguing, plaintiff relies on *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), a case involving the long-term administration of antipsychotic drugs to a prisoner against his will. The governing prison policy in *Harper* provided, *inter alia*, that an inmate who "suffers from a mental disorder," is "gravely disabled," or presents a "likelihood of serious harm to himself, others, or their property" may be involuntarily medicated by a psychiatrist, after a hearing by a special committee consisting of a psychologist, a psychiatrist, and a prison official. *Id.* at 215, 110 S.Ct. at 1033. The Supreme Court explicitly recognized that the prisoner had a "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process clause of the Fourteenth Amendment." 494 U.S. at 221, 110 S.Ct. at 1036. However, the Court upheld the policy as conforming to both substantive and procedural due process requirements. At trial, plaintiff, basing his argument on *Harper*, argued that his constitutional rights had been violated because defendant is not a licensed psychiatrist, plaintiff had not been officially deemed mentally ill, and no hearing was conducted prior to the administration of the drugs. However, the *Harper* case clearly is not applicable to this situation. Indeed, as Justice Stevens mentioned in a separate opinion, the SOC policy addressing the forced medication of inmates on an emergency basis was not at issue in *Harper*. *Id.* at

246, 110 S.Ct. at 1049–50 (Stevens, J., concurring in part and dissenting in part).

In *Hogan v. Carter,* 85 F.3d 1113 (4th Cir.1996), however, the Fourth Circuit, sitting en banc, specifically addressed the administration of antipsychotic drugs in an emergency on facts almost identical to the case at bar. The Fourth Circuit held that a licensed psychiatrist who administered a single dose of Thorazine to a mentally ill patient in an emergency situation did not violate any clearly established law. Referring to *Harper,* the *Hogan* court recognized that an inmate does have a constitutionally protected liberty interest in avoiding the involuntary administration of antipsychotic drugs, *but* a state actor may nevertheless involuntarily treat an inmate who has a mental illness with such drugs, if that inmate is a danger to himself or others, and the treatment is in the inmate's medical interest. *Id.* at 1116. The rule to be garnered from *Hogan* is that a prison doctor, if he has reasonable grounds to believe that an inmate is a danger to himself or others, utilizing his medical judgment in a medically appropriate manner, may inject the inmate with a sedative to deal with an emergency situation.

Since the Court charged the jury in accordance with the rule set forth in *Hogan,* and plaintiff has failed to take proper objection to that charge, said rule becomes the law of this case. Plaintiff's motion for judgment as a matter of law after trial clearly must be denied.

Plaintiff's motion for a new trial is also totally without merit. The jury properly decided this case in accordance with the overwhelming weight of the evidence. There is no reason for this case to be retried.

It is evident that plaintiff refuses to accept the fact that he has lost this civil case after a full and fair trial. The jury decided against him after hearing all the witnesses that he wanted to present. He has no grounds for an appeal and any attempt at appeal would simply result in a waste of time and effort on everyone's part. The Court wishes to make it abundantly clear that government funds should not be utilized to finance a frivolous appeal. Therefore, if any motions to proceed in forma pauperis or to have trial transcripts produced at government expense are still outstanding in this case, said motions also are denied.

It is so ordered.