Victor M. **BARDNEY**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

Nos. 96 C 5034, 92 CR 1043.

United States District Court,
N.D. Illinois,
Eastern Division.

March 17, 1997.

---

R. Eugene Pincham, Chicago, IL, for Victor M. Bardney.

Victoria Jones Peters, Matthew Charles Crowl, U.S. Attorney's Office, Chicago, IL, for U.S.

### *OPINION AND ORDER*

NORGLE, District Judge:

Before the court is R. Eugene Pincham's ("Pincham") motion to vacate three orders entered by the court. For the reasons which ensue, the motion is denied.

### I.

Regrettably, the instant motion forces the court to revisit the history of recalcitrance exhibited by Pincham. On August 14, 1996, Pincham filed on behalf of Victor M. Bardney a motion to vacate, set aside, or correct the conviction and sentence imposed by the court. Pincham filed the motion pursuant to 28 U.S.C. § 2255. Fifteen days later, on August 29, 1996, the court, *sua sponte*, ordered Pincham to respond in writing by September 13, 1996, to show cause why the court should not impose sanctions for various flaws in the motion (the "August order"). September 13th came and went, but Pincham never filed the court-ordered response. On October 11, 1996, after four weeks of waiting and in the absence of Pincham's response, the court issued an Opinion and Order imposing a $1,000 monetary sanction pursuant to Federal Rule of Civil Procedure 11 (the "October order"). The October order gave Pincham fourteen days to pay the sanction amount, and granted him leave to amend the § 2255 petition. Again, the court waited for Pinc-

ham to comply. To this day, however, Pincham has neither paid the fine nor filed an amended petition on behalf of his incarcerated client. As a result of Pincham's continued silence and neglect, the court issued a third order, on December 11, 1996, requiring Pincham to appear on January 21, 1997, to show cause for his failure to comply with the previous orders of the court (the "December order").

On January 21, 1997, more than five months after he filed the § 2255 petition, Pincham appeared before the court and filed a motion to vacate the court's earlier orders. Disregarding the self-serving recitation of his "legal-professional 45–year career" and his baseless claim that the court took part in attacks on his personal character, Pincham's motion contends that he "had no knowledge of and did not receive notice of the entry of" the three orders "until or after December 16, 1996." According to Pincham, the entry of the sanction order without Pincham's actual knowledge or notice of the entry of the August and October orders denied him the process afforded him by the Constitution. The court disagrees.

## II.

At the outset, the court notes that Pincham's motion is devoid of citation to relevant legal or statutory authority; it even fails to cite to the rule upon which it is purportedly brought. In *Doe, By and Through G.S. v. Johnson,* 52 F.3d 1448, 1457 (7th Cir.1995), the United States Court of Appeals for the Seventh Circuit stated, "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point." A strict reading of *Johnson* would require the court to deny the motion outright without discussion of the arguments contained within it. However, the court declines the opportunity to do so, and instead will discuss Pincham's contentions within the context of the applicable procedural rules and laws.

### A. August and December Orders

■■ The court notes that both the August order, in which the court ordered Pincham to file a written response to show cause for why it should not sanction him, and the December order, in which the court ordered Pincham to appear before it, are mere scheduling orders, and are not properly the subject of motions to reconsider. The court issued the August order in compliance with Federal Rule of Civil Procedure 11, and Pincham has not supplied the court with any reasonable justification for vacating it. With regard to the December order, of which Pincham acknowledges receipt, the court notes that Pincham obeyed that order and appeared on January 21, 1997, at which time he filed the instant motion. Because Pincham has not given the court sufficient reason for vacating the August and December orders, the court denies the motion as to those two orders, noting that the elimination of those orders would have absolutely no effect. Those orders aside, the crux of Pincham's motion relates to the October order, in which the court imposed a monetary sanction upon Pincham.

### B. October Order

#### 1. Type and Standard Associated With Motion

■ After the court entered the October order, Pincham had four options. Pincham could have filed a Rule 59(e) motion to alter or amend the court's sanction order, which is a "judgment" for purposes of Rules 54 and 59. *Burda v. M. Ecker Co.,* 954 F.2d 434, 439 (7th Cir.1992). Pincham did not do so, presumably because he "did not receive notice of it." Pincham could have also appealed the sanction order within thirty days after the date of its entry, see Fed.R.App.P. 4(a)(1), but did not because—again,the court surmises—he "did not receive notice of it." In addition, Pincham could have requested that the court reopen the appeal period, see Fed.R.App.P. 4(a)(6), but, for reasons not known to the court, Pincham neglected to make such a request.

■ Thus, the remaining avenue for relief from the sanction order, a judgment, was to request that the court reconsider it. The court could do so pursuant to either its inherent authority, as recognized in Rule 54 and *Akzo Coatings, Inc. v. Ainger Corp.,* 909

F.Supp. 1154, 1159 (N.D.Ind.1995), or its authority pursuant to Rule 60(b).

▮ Rule 60(b) allows a court to "relieve a party or a party's legal representative from a final judgment, order, or proceeding. . . ." Therefore, the Rule comes into play only if the court's sanction order can be termed a "final judgment," "final order," or "final proceeding." We know from *FirsTier Mortgage Co. v. Investors Mortgage Insur. Co.*, 498 U.S. 269, 275, 111 S.Ct. 648, 652, 112 L.Ed.2d 743 (1991), that a sanction order is not a final judgment, though it is "a judgment." *Burda v. M. Ecker Co.*, 954 F.2d 434, 439 (7th Cir.1992). However, the court concludes that its sanction order was a "final" one for purposes of Rule 60(b) because (1) the Rule 11 sanction order was a separate judicial unit from the merits of the underlying § 2255 petition, *see Cassidy v. Cassidy*, 950 F.2d 381, 382 (7th Cir.1991), (2) the sanction—order included the exact sanction amount, *see Gates v. Central States Teamsters Pension Fund*, 788 F.2d 1341, 1342 (7th Cir.1986), and (3) it was clear from the October order that the court intended the sanction order to be the final decision, *TMF Tool Co., Inc. v. Muller*, 913 F.2d 1185, 1189 (7th Cir.1990). Thus, the arguments found within Pincham's motion must fit into one of the six bases for Rule 60(b) relief:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b). For purposes of the instant motion, the court will view Pincham's arguments as though brought under the first and sixth prongs.

*2. Contentions of Motion*

At the outset, the court notes that Pages Six through Twelve of the initial memorandum and Pages Six through Thirteen of the reply memorandum in support of the motion *sub judice* discuss either (1) Pincham's claimed expertise as an Illinois attorney, including Pincham's work as a state trial and appellate judge, (2) alleged "unwarranted personal attacks against Attorney Pincham" by the court, or (3) the substance of the underlying § 2255 petition. The court need not discuss the arguments found within those pages within this Section, as they bear no worth to the 60(b) determination. Save those pages, which the court will address in Section III of this Opinion and Order, the court will discuss the merits of Pincham's motion to vacate the three orders issued by the court.

Pincham's pleadings contain two separate, though related, arguments for relief from the October order. First, Pincham claims that he had no actual knowledge of the October order, and was thus denied procedural due process. Second, Pincham asserts that his failure to respond to the October order was justified, *i.e.* "excusable," in that "he did not receive notice" of the Order and, thus, could not possibly have complied it. The court will discuss these arguments in turn.

*a. Constitutional Notice*

▮ Pincham contends that "constitutional due process demanded that Attorney Pincham be given notice and an opportunity to be heard prior to, and at and on, the court's sua sponte October 11, 1996 findings, concerns, opinions and order imposing a $1,000.00 sanction upon and against Attorney Pincham." The court agrees with Pincham so far as the contention that both the Federal Rules of Civil Procedure and the United States Constitution require that the court give Pincham notice prior to the imposition of sanctions. But, as will be discussed *infra*, the court did, in fact, give Pincham the constitutionally-and-federal-rule-required notice, though Pincham declares he never received actual knowledge of the August and October orders.

*i. Substantive Rule 11 Requirements*

■ Pincham does not, and cannot, argue that the court did not comply with Rule 11. The Rule states, "On its own initiative, the court may *enter* an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney ... to show cause why it has not violated subdivision (b) with respect thereto." (emphasis added). On August 29, 1996, the court complied with that portion of Rule 11 by entering such an order:

> The signer of the petition, Attorney Pincham, shall respond in writing on or before September 13, 1996, to show cause why sanctions should not be imposed against him for violations of Federal Rule of Civil Procedure 11(b)(1) & (2), in that he:
>
> (a) has failed in the petition to disclose, mention or cite the decision of the Seventh Circuit Court of Appeals affirming the judgment of conviction issued by the trial court;
>
> (b) has failed to disclose, mention, or cite to the denial of rehearing by the Seventh Circuit Court of Appeals, and the denial of certiorari by the United States Supreme Court;
>
> (c) has raised frivolous issues in bringing the petition pursuant to 28 U.S.C. § 2255, by raising issues identical to those raised on direct appeal and reject-

> ed by the Seventh Circuit Court of Appeals (with the exception of the *Bailey* issue);
>
> (d) has failed to research and/or cite to applicable cases decided by courts within the Seventh Judicial Circuit regarding the *Bailey* decision.

■ As will be described, the court did more than simply enter the above order; it gave Pincham notice. Once the court made its decision to impose sanctions, it was required to evaluate each basis presented for the sanctions, *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir.1988), and to provide enough explanation so that an appellate court would have the ability to review the substance of the order, *LaSalle Nat. Bank of Chicago v. County of DuPage*, 10 F.3d 1333, 1338 (7th Cir.1993). The October order satisfies those requirements by providing a thorough evaluation of three bases for sanctions: Pincham (1) failed to disclose, mention or cite superior court decisions [1]; (2) raised issues identical to those raised and rejected on direct appeal; and (3) with regard to the argument related to *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), failed to research and cite to applicable cases decided within the Seventh Judicial Circuit. As such, the court satisfied the applicable requirements,

---

1. Pincham contends that the § 2255 petition "clearly contradicts and refutes" the court's contention that he did not "disclose, mention or cite the decision of the Seventh Circuit." In support, Pincham refers to Paragraphs 23 through 25 of the petition, which states in relevant part,

> 23. It is indeed ironic that on October 19, 1994, two weeks after oral argument of the instant cause in October 6, 1994, before and while awaiting decision by the United States Court of Appeals for the Seventh Circuit,....
> 24. It is even more ironic that Circuit Judge Kanne, the author of the foregoing published opinion ... was likewise on the panel of the instant Rule 55 unpublished opinion....
> 25. Thus, it is clear that the Court of Appeals ... reversal of [another individual's] conviction because the trial court refused to grant ... an evidentiary hearing on his Motion to Suppress, in its published opinion, the Court of Appeals' contrary and diametrically opposite ruling in this case at bar that Petitioner Bardney was not entitled to an evidentiary hearing on his Motion to Suppress, in a Rule 55 unpublished opinion, clearly and flagrantly violate

Bardney's constitutional rights to the equal protection and due process of law.

Within the cavitation of Paragraphs 23, 24 and 25, Pincham does intimate that the United States Court of Appeals for the Seventh Circuit took part in appellate review of the trial. However, the court notes that Pincham did not provide the court with any appropriate citation to which the court could look. Nor did Pincham disclose or mention that the Seventh Circuit affirmed the totality of Pincham's client's conviction. As the court noted in the October order, it bears noting that "seven of [the eight arguments made in the § 2255 petition] are identical to arguments raised on direct appeal and summarily rejected by the Seventh Circuit." Nor did Pincham advise the court that he filed a petition for rehearing, which the Seventh Circuit denied, and applied for certiorari, which the United States Supreme Court denied. Additionally, the incivility of Pincham's use of strident critical language, such as the phrase "clearly and flagrantly violate," and references to "irony" in Paragraphs 23 and 24, objurgate rather than elucidate in a lawyerlike manner.

set forth by rule and by case law, in relation to the imposition of Rule 11 sanctions. Thus, in order to prevail, Pincham's argument must center around notice, as it is defined by the Constitution and the applicable Federal Rules of Civil Procedure, namely Rules 77 and 5.

### ii. Notice Requirements

At first, the court notes that due process requires notice of an order, but "does not require notice in fact." *Schluga v. City of Milwaukee*, 101 F.3d 60, 62 (7th Cir.1996); *Tulsa Professional Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484, 489–90, 108 S.Ct. 1340, 1344, 1347–48, 99 L.Ed.2d 565 (1988).

Rules 77 and 5 define the necessary notice. Rule 77(d), titled "Notice of Orders or Judgments," states,

Immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon each party who is not in default for failure to appear, and shall make a note of the docket of the mailing.... Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed.

Indeed, the Advisory Committee Notes that accompany the 1946 Amendment of Rule 77 "make[ ] it clear" that "[n]otification by the clerk is merely for the convenience of the litigants."

Rule 5(b), titled "[Service of Notice]: How Made," states,

Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to the attorney or party or by mailing it to the attorney or party at the attorney's or party's last known address or, if no address is known, by leaving it with the clerk of the court. Delivery of a copy within this rule means: handing it to the attorney or to the party; or leaving it at the attorney's or party's office with a clerk or other person in charge thereof; or, if there is no one in charge, leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at the person's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein. *Service by mail is complete upon mailing.* (emphasis added).

Consistent with Rules 77 and 5, the court clerk served notice of the three orders at issue to Pincham by executing the following procedure. Upon the entry of the August order, the court tendered the order (in its original form) to its assigned courtroom deputy, Eric Fulbright. Mr. Fulbright then delivered the order to the court clerk's office. As the actual minute order reflects, the "central clerk's office" received the order at 4:44 p.m. on the date of issuance. The next day, a deputy court clerk, Karen Knapp, placed her initials on two sections of the minute order to signify that she entered the order into the court's computer docket and sent to all counsel of record a copy of the order.

The same service of notice procedure occurred upon the court's issuance of the October order: upon signing the Opinion and Order, the court tendered the October order to its assigned courtroom deputy, Mr. Fulbright. Mr. Fulbright then filed the order with the "central clerk's office," which received the order at 3:55 p.m. on the date of issuance. Four days later, on October 15, 1996, Karen Knapp placed her initials on the two sections of the minute order form to signify that she entered the order into the computer and sent to all counsel of record a copy of the Opinion and Order.

Finally, the same procedure ensued after the court issued the December order, of which Pincham admits he received a copy. The court tendered a copy of that order to Mr. Fulbright, who then delivered the order to the "central clerk's office." The court clerk's office received the order at 5:15 p.m. on December 12, 1996. One day later, on December 13, 1996, deputy clerk Carol Hoesly placed her initials on the section of the minute order form that signifies that she mailed the order to all counsel of record.

Four days after that, on December 17, 1996, Carol Hoesly placed her initials on the section of the minute order form that signifies that she entered the minute order into the computer docket.

The method of service of notice of each and every one of the above three orders was consistent with the above Rules. On each occasion, a member of the court clerk's office sent a copy of the order to Pincham's last known address which, according to a comparison of the pleadings and the computer docket, is also Pincham's current address, and made a docket entry to so reflect. This procedure is the same procedure used by the court clerk in giving all other attorneys in all other cases notice of court orders. The court clerk's service of notice to Pincham of the August, October, and December orders was complete upon that mailing. Thus, the court gave Pincham sufficient notice of its orders, and Pincham's argument that the court did not give him "constituionally required notice" is in error.

### b. Excusable Neglect or "Any Other Reason Justifying Relief"

Because the court effectively served upon Pincham notice of the three orders at issue, as discussed above, Pincham's motion may not succeed unless he sufficiently establishes either the first or sixth prong of Rule 60(b). Pincham asserts that he did not receive the notice of the August, October, and December orders until December 16, 1996. Thus, according to Pincham, he could not have filed the court-ordered response by September 13, 1996, or pay the $1,000 sanction amount by the court-ordered due date, October 25, 1996, and the court should vacate them because they are "clearly invalid."

■ The court looks with great caution upon Pincham's contention that he had no actual knowledge that the court entered the August and October orders. First, the court notes that Pincham neither requested an evidentiary hearing to corroborate his representations to the court that "he did not receive" notice of the orders, as he believes a hearing would be both "invalid and unacceptable," nor chose to supplement his initial memorandum or reply brief with affidavits to support

his assertion that he did not have knowledge of the order.

■ Second, the court takes judicial notice of the fact that the court's October sanction order caused to be written two distinct news articles in two major publications. See Fed.R.Evid. 201(b) & (c). On October 25, 1996, Carol McHugh Sanders wrote a lengthy seventeen-paragraph article in the *Chicago Daily Law Bulletin* titled "Ex–Appeals Judge Sanctions; U.S. Filing 'Frivolous'." See Chi. Daily L. Bull. 1, October 25, 1996 ("R. Eugene Pincham, a candidate for Cook County state's attorney and a retired 1st District Illinois Appellate Court Justice, has been sanctioned $1,000 in U.S. District Court for filing a frivolous petition that included misrepresentations...."). According to that article, the author contacted Pincham's campaign press aide, who informed the author "that Pincham was not available for comment." *Id.* Also, on October 29, 1996, Mitchell Locin and Andrew Fegelman co-authored a column in the *Chicago Tribune*, titled "Election '96. Political Notebook." That column included a section, titled "Pincham sanctioned," which read, "R. Eugene Pincham, a third-party candidate for [the current Cook County State's Attorney's] job, has been ordered to pay $1,000 in U.S. District Court for filing a frivolous petition that included misrepresentations. U.S. District Judge Charles Norgle imposed the sanction for a petition that Pincham filed in August on behalf of a client." Chi. Trib. 4, October 29, 1996, 1996 WL 2721681. In light of these articles, the court looks askance at Pincham's claim that he had no knowledge of the court's orders.

Yet, even accepting Pincham's representations, the "I didn't receive notice" defense doesn't work in federal court. Were it to work, any disingenuous attorney could delay, or even preclude, compliance with a court order by asserting a justification akin to the "ostrich defense," a defense frequently asserted in criminal matters. See *United States v. Phibbs*, 999 F.2d 1053, 1075 (6th Cir.1993); *United States v. Stone*, 987 F.2d 469, 470–71 (7th Cir.1993) (noting that the proper jury instruction when such a defense is raised is, "If you find that a person had a

strong suspicion that things were not what they seemed, or that someone had withheld some important fact, yet shut his eyes for fear of what he would learn, you may conclude that he acted knowingly, as I have used the word."); *United States v. Burnside,* 824 F.Supp. 1215, 1256 (N.D.Ill.1993). By refusing to open mail originating from the court clerk's offices or opposing counsel, refusing to read local newspapers, refusing to view television news programs, refusing to attend status calls, and refusing to monitor the court docket, deceitful or otherwise dishonest attorneys could evade at will the authority of the court. Insuper, the clerks of the various state and federal courts would be forced to concoct a procedure for "personal service" of a court order, much like the procedure for service of a complaint. But, for good reason, the "ostrich defense" does not "fly" in federal court.

Instead, Pincham's claim of ignorance is neither innocence, see Robert Browning, *The Inn Album,* canto 5 (1875), nor excusable neglect. An attorney has a clear obligation to move his client's case forward while keeping his client informed of the status of the court proceedings. Consistent with that obligation, it is also the duty of counsel "to monitor the docket and to advise himself when the court enters an order against which he wishes to protest." *Mennen Co. v. Gillette Co.,* 719 F.2d 568, 570 (2d Cir.1983); *see Sparks Tune–Up Ctrs., Inc. v. Cummings Sign,* No. 91 C 4346, 1992 WL 77750, at *1 (N.D.Ill. Apr.2, 1992) (Aspen, J.) (noting that a an attorney of record "is charged with an affirmative duty to examine the docket for up-to-date entries"), *Gold v. Wolpert,* No. 84 C 4344, 1988 WL 40884 (N.D.Ill. Apr.26, 1988). Even if the court clerk did not give Pincham notice, which the court finds it did, "the mere failure of the clerk to give the parties notification that [an order] has been entered does not provide grounds for a finding of excusable neglect." *Mennen,* 719 F.2d at 570. Absent an allegation that the failure to monitor the docket was a result of a misleading action "of the court or its officers," the lack of receipt of notice is not a reason "justifying relief." *Id;* *Rodgers v. Wood,* 910 F.2d 444, 449 (7th Cir.1990) ("An attorney's negligent mistake,

evincing a lack of due care, is not a proper ground for relief under Rule 60(b)"); *Sparks,* 1992 WL 77750, at *1. Pincham does not make such an allegation, that the court clerk personnel failed to carry out their duties, and the court's careful review of the record reveals that the clerk's office followed the proper procedure for mailing notice.

In sum, the court clerk gave Pincham sufficient notice of the October sanctions order, as well as the August and December orders, by mailing each to his correct present address and by placing a copy of the orders in the court file. That court file is available to Pincham and the public. Pincham's neglect in adequately monitoring the court docket is inexcusable, and does not provide a justification for relief from the court's October sanction order. Accordingly, the court denies the motion.

### III.

The court takes this opportunity to address a number of extraneous and impertinent statements contained within both the initial memorandum in support of the instant motion as well as the reply brief. First, Pincham includes within his "reasons" for relief from the sanctions order a recounting of his *curriculum vitae.* He spends one-and-a-half pages describing his years as an attorney and judge, including his receipt of "over five hundred awards and honors throughout the length and breadth of this country for [his] professional and community services during his professional, legal and judicial career." The court commends Pincham on both his receipt of awards and his long-standing membership to the Illinois bar. That he may have planted a weedless garden, however, is not the issue. Further, the court notes that well-respected and well-known attorneys and judges have committed acts in violation of ethical rules and state and federal laws. *See United States v. Gary L. Fairchild,* No. 94 CR 812 (N.D.Ill.1994), *United States v. Maloney,* 71 F.3d 645 (7th Cir. 1995), *United States v. Shields,* 999 F.2d 1090 (7th Cir.1993), *United States v. Goot,* 894 F.2d 231 (7th Cir.1990). Most importantly, the information is irrelevant for the

same reasons Federal Rule of Evidence 404(b) was enacted. Rule 404(b) bars "[e]vidence of ... [good] acts ... [when introduced] to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). *See United States v. Hill,* 40 F.3d 164, 168 (7th Cir.1994) (citing *United States v. Camejo,* 929 F.2d 610, 613 (11th Cir.1991), for the proposition that evidence of "good acts" as proof of "good character" is inadmissible character evidence). Pincham's award-winning good acts are praiseworthy, but impertinent to this discussion. Pincham's attempt to cloak himself in a giant's robe is to no avail. If offered in mitigation of the sanction, however, Pincham's claim of an unblemished professional career would not have been disregarded by the court.

Not only do Pincham's pleadings include irrelevant argument relating to his past deeds and judgeships, but they also include the following inappropriate written statements:

- Now, by reasons of the above and foregoing, Attorney Pincham is put to the utterly impossible task of overcoming and reversing Judge Norgle's already formed and expressed opinions, reasons and rulings, however erroneous they may be.
- It is, indeed, unfortunate that it appears that during the trial of Petitioner Bardney on the instant indictment, as well as in the instant § 2255 proceedings, that Judge Norgle has engaged in totally unwarranted personal attacks against Attorney Pincham, and it further appears, tragically, that Judge Norgle, in both proceedings, was an advocate and failed to preside with fairness and impartiality, and without bias, expected and, indeed, demanded of Article 3 judges sitting on the United States District Court for the Northern District of Illinois, for reasons that are not apparent.
- This totally unrealistic and unacceptable solution puts Attorney Pincham to the utterly impossible task of changing and reversing the trial court's already formed opinions and conclusions, which were made and formed in violation of Petitioner Bardney's due process constitutional

right to notice and an opportunity to be heard to shape, influence and form the court's opinions and conclusions, before they are formed and made, in flagrant violation of constitutional due process; and is the Government's proposal of the age old adage, "**We will try him before we hang him.**" (emphasis in original).

- This response will not be further prolonged by pointing out the numerous statements in this Court's October 11, 1996 sua sponte opinion and order, which appear to reflect the trial court's unwarranted and unexplainable personal hostility and vendetta against Petitioner Bardney's counsel, Attorney R. Eugene Pincham.

The above statements constitute unsubstantiated ad hominem allegations that the court has acted with bias and impartiality both at trial and after Pincham filed the § 2255 petition on behalf of his client. Such allegations "are very serious and should never be cast without substantiation." *Matter of Wade,* 969 F.2d 241, 243 n. 2 (7th Cir.1992). Moreover, such allegations are included improperly within the memoranda in support of the motion to vacate the court's orders. *City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.,* 982 F.2d 1086, 1101 (7th Cir.1993). And here, though it is clear that Pincham intended the "audience" of these statements to be individuals outside of the judicial system, the court notes that the statements were not "extra judicial" ones; thus, the making of such statements does not violate Local General Rule 40, Local Rule of Professional Conduct ("LRPC") 3.5(i), and LRPC 3.6.

But the statements are arguably in violation of LRPC 8.4(a)(5), as they impugn the integrity of the district judge and the entire judicial system. Indeed, "Federal courts, no less than state courts, forbid ... false accusations that bring the judicial system into disrepute." *Matter of Palmisano,* 70 F.3d 483, 487 (7th Cir.1995). "Federal courts are no more willing to tolerate repeated, false, malicious accusations of judicial dishonesty than are state courts," and, in some cases, court-ordered sanctions may be warranted. *Id. United States v. Byrski,* 854 F.2d 955,

963–964 (7th Cir.1988) ("no amount of frustration can justify baseless attacks on the integrity of this court and the district court"). Further, the use of "offensive," "vituperative," "provocative," or "inflaming" language may support sanctions additional to those already imposed. *See Kunik v. Racine County,* 946 F.2d 1574, 1583 (7th Cir.1991).

Pincham's reckless statements disserve the federal judiciary, his client, who remains incarcerated pending ruling on the yet-to-be-filed amended § 2255 petition, and to the legal profession, a profession of which he reminds the court he has spent forty-five years as a member. Though the failure to obey court orders cannot be tolerated, *Reich v. Sea Sprite Boat Co.,* 50 F.3d 413 (7th Cir.1995), this court will nonetheless exercise restraint in imposing additional sanctions. Instead of added monetary sanctions, the court orders Pincham to read the Local Rules of Professional Conduct, the Seventh Circuit's Rules of Civility, and the cases cited in this Opinion and Order. Pincham shall then certify to this court that he has done so within fourteen days of this order. The certification shall be filed with the clerk of the court.

## IV.

In conclusion, the court has an obligation to the federal judicial system to oversee its own docket to ensure that each case assigned to it has, at the very least, arguable merit so as to root out the baseless filings from the system and remove from the opposing litigants the burden of "needless expense and delay." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 398, 110 S.Ct. 2447, 2457, 110 L.Ed.2d 359 (1990). The court can live up to this duty by enforcing Federal Rule of Civil Procedure 11, since the Federal Rules of Civil Procedure are not rules that a district judge may opt to disregard. Rather, "[t]he Supreme Court insists that federal judges carry out the rules of procedure, whether or not those rules strike the judges as optimal." *Tuke v. United States,* 76 F.3d 155, 157 (7th Cir.1996). This court did so in imposing sanctions upon Pincham and requiring him to amend his client's § 2255 petition. Because the court denies the motion, and because Pincham has waived his right to appeal, Pincham shall remit to the court clerk the past due $1,000 sanction pursuant to its October order for his failure to comply not only with the court's earlier orders, but with Federal Rule of Civil Procedure 11. Pincham has fourteen days to do so, as well as to amend the § 2255 petition and to make the certification required by this Opinion and Order.

IT IS SO ORDERED.