**In re Peter MAYHEW, Debtor.**

**Nos. Civ.A. 97–136L, Civ.A. 97–690L.**

United States District Court,
D. Rhode Island.

July 31, 1998.

850

Geoffrey A. Regan, Kirshenbaum & Kirshenbaum, Cranston, RI, for plaintiffs.

Russell D. Raskin, Raskin & Berman, Providence, RI, for defendants.

John Boyajian, Providence, RI, for trustee.

## OPINION AND ORDER

LAGUEUX, Chief Judge.

These cases illustrate in painful detail what can happen when an attorney falls asleep at the switch. The cases are appeals to this Court from separate orders of the United States Bankruptcy Court for the District of Rhode Island, arising out of the same bankruptcy proceeding. The appeals flow from the failure of creditor-appellant Jane Landers ("Landers") to appeal an unfavorable ruling made by the Bankruptcy Court in connection with her effort to convert the bankruptcy of debtor-appellee Peter Mayhew ("Mayhew") from Chapter 13 to Chapter 7. Landers now seeks to escape the consequences of this inaction by appealing related rulings made by the Bankruptcy Court, and attempting to persuade this Court to allow her to revisit the issue which she failed to appeal below.

For the reasons that follow, this effort is rejected, and the orders of the Bankruptcy Court are affirmed in both cases.

## I. Background

The genesis of this case lies in a contract dispute between Mayhew and Landers, regarding a home to be constructed by the former for the latter. The dispute was resolved by an arbitrator, who on June 30, 1994 awarded Landers $209,093.62, with interest to accrue beginning thirty days after the date of the award at 0.75% per month, or 9% per annum, and running through the final date of payment. The arbitrator also ordered that Mayhew return certain specified items of personal property to Landers. On September 8, 1994, a justice of the Rhode Island Superior Court confirmed the arbitrator's award.

On August 2, 1995, an involuntary bankruptcy petition was filed against Mayhew in the United States Bankruptcy Court for the District of Rhode Island. On October 1, 1996, Landers filed a motion to convert the bankruptcy from Chapter 13 to Chapter 7, arguing that Mayhew owed unsecured debts of over $250,000, and was thus jurisdictionally ineligible for Chapter 13 relief. Landers argued that the proper interest rate on the cash portion of the arbitrator's award was the 12% rate provided in R.I.G.L. § 9–21–10 [1], rather than the 9% rate set by the arbitrator. When the 12% rate was applied, Landers contended, the "balance together with the undisputed balances of other unsecured claims, indicate a total unsecured debt equaled [sic] to $256,545.49."

On October 7, 1996, Mayhew responded that "the imposition of interest in an arbitration proceeding is a matter addressed to the arbitrator and the award of the arbitrator in that regard controls." Furthermore, Mayhew retorted, R.I.G.L. § 9–21–10 "does not apply to judgments in actions for damages for breach of contract ." As a result, Mayhew concluded, the proper interest rate was 9%, and the total unsecured debt did not exceed $250,000.

On October 10, 1996, the Bankruptcy Court held a hearing on a separate motion. At that time, the Court raised the issue of Landers' motion to convert, and the parties presented their respective arguments. At the conclusion of the hearing, the Court asked the Trustee to offer his view of whether the case should be converted, and took the motion to convert under advisement. The Bankruptcy Court's docket states, "[t]he court will notify the parties if a further hearing is necessary."

On October 24, 1996, the Trustee filed a brief on the issue, and on November 8, 1996, the Court issued an order (the "November 8 Order") denying Landers' motion to convert. The November 8 Order states:

> For the reason argued by the Debtor in his Objection (Docket # 41 which we adopt

---

1. R.I.G.L. § 9–21–10(a) states, in relevant part:

In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein. Post-judgment interest shall be calculated at the rate of twelve percent (12%) per annum and accrue on both the principal amount of the judgment and the prejudgment interest entered therein. This section shall not apply until entry of judgment or to any contractual obligation where interest is already provided.

and incorporate herein), the Motion to Convert is DENIED. Additionally, we will treat this matter as if the Movant requested a stay pending appeal, and DENY the same.

The November 8 Order is signed by the Bankruptcy Judge and dated November 8, 1996. It also states, "Entered on Docket: 11/8/96".

It is undisputed that Landers did not appeal the November 8 Order within the ten-day period set forth in Bankr.R. 8002(a).[2] It is further undisputed that Landers did not avail herself of any of the other means by which Bankr.R. 8002 allows a party to contest an unfavorable ruling.[3]

Instead, on December 10, 1996, well past the expiration of the appeal period, Landers filed a motion under Fed.R.Civ.P. Rule 60(b)(1) to vacate the November 8 Order.[4] Landers contended that her counsel did not receive a copy of the November 8 Order, and that counsel only learned of the November 8 Order when he called "the Clerk" to inform him that "there were additional items in the Proof of Claim which had to be added to the Motion to Reconsider."[5] As a result, Landers was "deprived of the opportunity to ask that the Court reconsider the matter, or take an appeal." Landers further argued that the Bankruptcy Court denied the motion to convert without considering the value of the specific items which the arbitrator awarded to Landers, and that had the value of these items been added to Landers' claim, Mayhew's total unsecured debt may have exceeded $250,000 and pushed the case outside Chapter 13.

On December 20, 1996, Mayhew responded to the Motion to Vacate, contending that Landers first failed to identify any specific grounds for relief under Rule 60(b)(1). Landers simply failed to appeal, argued Mayhew, and even if she did not receive notice of the November 8 Order, her failure to check the docket precluded relief under Rule 60(b)(1). Regarding the personal property issue, Mayhew maintained that the burden was on Landers to present evidence as to the value of those items, and her failure to do so likewise precluded relief. Finally, Mayhew suggested that vacating the November 8 Order would serve only to delay the proceedings in bankruptcy.

On January 8, 1997, the Bankruptcy Court denied Landers' Motion to Vacate, issuing an order (the "January 8 Order") reading as follows:

> Before the Court is the Motion of Jane Landers to vacate our Order of November 8, 1996 denying Lander's [sic] motion to convert this case to Chapter 7. For the reasons stated by the Debtor in his Objection (Docket Nos. 54 & 55), which we adopt and incorporate herein by reference, the Motion to Vacate is DENIED. *See also In re Almacs, Inc.,* 181 B.R. 143, 143–44 (Bankr.D.R.I.1995).

Landers timely appealed the January 8 Order to this Court, which appeal is denominated C.A. No. 97–136L. On June 4, 1997, Landers submitted her brief on appeal, which repeated the argument made below with respect to the personal property issue, but which added a new wrinkle (not raised below) regarding the issue of excusable neglect. Landers now claimed, for the first time, that, not having heard of a decision on the motion to convert, her counsel telephoned the Bankruptcy Court's law clerk on December 18, 1996. The law clerk, so the story goes, said that he believed a decision had

---

**2.** Bankr.R. 8002(a) states, in relevant part: "The notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from."

**3.** *See* Bankr.R. 8002(b) and (c). Bankr.R. 8002(b) allows a party to file various motions (*e.g.,* a motion to alter or amend judgment) within the appeal period, and tolls the running of the appeal period pending the consideration of the motion. Rule 8002(c) allows a party, in certain circumstances, to request an extension of the appeal period.

**4.** Under Bankruptcy Rule 9024, Rule 60(b)(1) applies to bankruptcy proceedings. Rule 60(b)(1) states, in relevant part: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... mistake, inadvertence, surprise, or excusable neglect...."

**5.** The reference to a "Motion to Reconsider" is mysterious. The docket reflects no such motion.

been made, but that he could not find an order in the file or in the computer. The law clerk allegedly promised to investigate the matter and update counsel. On December 19, Landers' brief continued, the law clerk told counsel that a decision had been made, but that it could not be located in the file. Not to worry, said the law clerk; counsel was still within the ten-day appeal period. However, on December 20, the law clerk informed Counsel that the November 8 Order had actually been entered on the docket on December 8, and that the appeal period had run. Landers' brief then stated: "Accordingly, on December 10, 1996, Landers filed a motion to vacate ("the Motion to Vacate") the Court's December 8 Order under Federal Rule 60(b)." [6]

Mayhew responded on June 6, 1997, essentially repeating his arguments below concerning the issues of excusable neglect and the value of the personal property listed in the arbitrator's award.

On June 18, Landers submitted a "supplemental brief", which appears to be identical to her original brief. On the same date, however, Mayhew submitted a supplemental brief which argued that Landers had relinquished any claim to the personal property items at issue.[7] Thus, Mayhew contended, the entire basis for the motion to vacate was removed, and the case was moot.

This Court held a hearing on this appeal on December 3, 1997. At the hearing, Landers raised, for the first time, the issue of which interest rate should apply, as discussed *supra*. This issue, as noted, had not

been appealed in the Bankruptcy Court, had not been raised on the motion to vacate in that Court, and had been alluded to only in passing in Landers' submissions to this Court.[8] Landers also raised another new issue, unmentioned in her briefs to this Court: she now contended that the January 8 Order was improper because the Bankruptcy Court, in ruling on the motion to vacate, simply adopted and incorporated Mayhew's brief rather than issue its own findings of fact and conclusions of law.

For his part, Mayhew simply reiterated that there was no excusable neglect in this case, and that since Landers dropped the claim to the personal property, the appeal was moot. Mayhew vigorously argued that the issue of the interest rate was not properly before this Court, as that ruling had never been appealed below and was not raised on the motion to vacate.

Following oral arguments, the Court took the matter under advisement.

Meanwhile, the events giving rise to the other appeal considered herein, C.A. No. 97–690L, were taking shape. On January 14, 1997, Mayhew objected (in the Bankruptcy Court) to an amended proof of claim filed by Landers. While Mayhew objected on several grounds, the relevant one for present purposes was that Landers had, in her amended proof of claim, used a 12% interest rate on the cash portion of the arbitrator's award, rather than the 9% rate set by the arbitrator. On January 27, 1997, Landers responded, making the same arguments regarding the

---

**6.** This statement is reminiscent of a puzzle in which one must determine what is wrong with a given picture. Indeed, chronic confusion (at best), and/or intentional misstatements (at worst), regarding dates on which certain events took place are a hallmark of Landers' submissions to this Court in both appeals. Setting aside, for now, the awesome difficulty of filing a motion on December 10 based on events that would not occur until eight to ten days later, the above-quoted statement reveals a tactic relentlessly pursued by Landers: referring to the November 8 Order as the "December 8 Order". This is apparently based on the assertion that the November 8 Order was not entered on the docket until December 8, and seems intended to make the December 10 motion to vacate appear to have been filed within the appeal period.

**7.** It is undisputed that this is, in fact, the case. Indeed, ¶ 4 of the Joint Pre–Trial Order, filed on June 25, 1997 in the Bankruptcy Court, states, "Creditor Landers has agreed to amend her claim in this proceeding to remove any claim for funds resulting from paragraph 2(a) through (f) of the arbitrator's award." Paragraphs 2(a) through (f) list the items of personal property referenced *supra*.

**8.** The issue of interest was noted in Landers' "Statement of the Case", and in the point headings to her arguments. However, no actual argument about which interest rate should apply was presented.

interest rate as on the motion to convert, as described *supra*.

On June 25, 1997, Landers filed a memorandum reiterating her contentions, and on June 30, 1997, Mayhew similarly restated his position. Both parties essentially took the same views as they had on the motion to convert.

On September 23, 1997, the Bankruptcy Court entered an order (the "September 23 Order") sustaining Mayhew's objection to Landers' amended Proof of Claim on the interest rate issue. The September 23 Order reads, in relevant part:

> The Debtor's Objection to Landers' claim with regard to interest is SUSTAINED. We have ruled on this issue previously, *in this case*, and held that the interest rate set by the Arbitrator controls, and not the statutory interest rate under R.I. Gen. Laws § 9–21–10. See Order of November 8, 1996. Our prior (unappealed) ruling is the law of the case and the issue is *res judicata*.
>
> In the event of an appeal, and if it is determined that the interest issue is not *res judicata*, this Court adopts and incorporates herein by reference the Debtor's legal argument on the interest rate issue. See Debtor's Memorandum dated June 30, 1997, Docket # $86.

Landers timely appealed this Order, and thus was born C.A. No. 97–690L. On January 22, 1998, Landers filed her brief on appeal, making three arguments. The first was that the September 23 Order was invalid in that it simply adopted and incorporated Mayhew's brief, rather than stating independent findings of fact and conclusions of law. The second was that the November 8 Order "was on appeal de novo and as such cannot form the basis of res judicata or law of the case". Under the rubric of this contention, Landers stated that "[i]n the present case, the Appellant has effectively been denied the ability to appeal and resolve an important jurisdictional issue of law, i.e. what interest rate controls arbitrator's [sic] awards *after* they have been confirmed by the Superior Court and become judgments of that Court." Finally, Landers addressed the merits of the interest rate issue, arguing for the 12% rate.

Mayhew, responded that: (1) that the September 23 Order was valid regardless of its form; (2) the November 8 Order was never appealed and was not properly before this Court; and (3) the proper interest rate was 9%.

On March 24, 1998, this Court held a hearing on this appeal. Following oral arguments, the Court took the matter under advisement and advised the parties that both this appeal and the one in C.A. No. 136L would be decided together.

The Court has now considered all the arguments of the parties on these appeals. The matters are now in order for decision.

## II. Jurisdiction and General Standard of Review

■ This Court has jurisdiction to hear appeals from final judgments, orders, and decrees of the Bankruptcy Court. *See* 28 U.S.C. § 158(a). Pursuant to 28 U.S.C. § 158(c)(2), "[i]n reviewing an appeal from the bankruptcy court, the district court applies the identical standards of review that govern appeals of civil cases to appellate courts generally." *North Atlantic Fishing, Inc. v. Geremia*, 153 B.R. 607, 610 (D.R.I. 1993) (citing *In re LaRoche*, 969 F.2d 1299, 1301 (1st Cir.1992)). "Accordingly, the Court will review the Bankruptcy Court's legal conclusions *de novo* ... and will set aside findings of fact only if ... 'clearly erroneous.'" *Id.* (citing Bankr.R. 8013) (internal citation omitted).

## III. C.A. No. 97–136L: The January 8 Order

■ Because the sequence of events in these appeals is somewhat confusing, it is necessary to restate the precise nature of each appeal. C.A. No. 97–136L is Landers' appeal of the Bankruptcy Court's January 8 Order denying Landers' motion, under Fed. R.Civ.P. 60(b)(1), to vacate that Court's November 8 Order.

"Motions brought under Civil Rule 60(b) are committed to the district court's discretion and denials thereof are reviewed only for an abuse of that discretion." *Teamsters,*

*Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transportation Co., Inc.,* 953 F.2d 17, 19 (1st Cir.1992). As noted, this Court reviews the Bankruptcy Court's action on the motion to vacate in the same manner that the First Circuit would review this Court's rulings. *North Atlantic Fishing,* 153 B.R. at 610. The question, then, is a simple one: did the Bankruptcy Court abuse its discretion in denying the motion to vacate?

As noted *supra,* Fed.R.Civ.P. 60(b)(1) provides, in relevant part: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... mistake, inadvertence, surprise, or excusable neglect...."

The First Circuit has noted that Rule 60(b) attempts to balance the desirability of finality as applied to court judgments with the desirability of deciding disputes on the merits. *Teamsters,* 953 F.2d at 19. To that end,

> [t]he need to harmonize these competing policies has led courts to pronounce themselves disinclined to disturb judgments under the aegis of Rule 60(b) unless the movant can demonstrate that certain criteria have been achieved. In general, these criteria include (1) timeliness, (2) the existence of exceptional circumstances justifying extraordinary relief, and (3) the absence of unfair prejudice to the opposing party.

*Id.* at 19–20. In addition, Rule 60(b) relief is inappropriate if there is no meritorious underlying claim; "a litigant, as a precondition to relief under Rule 60(b), must give the trial court reason to believe that vacating the judgment will not be an empty exercise." *Id.* at 20.

In the present case, the second criterion identified by the First Circuit is dispositive: there clearly exist no exceptional circumstances justifying extraordinary relief. In the context of Rule 60(b)(1), the "exceptional circumstances" to which the First Circuit refers are enumerated in the rule itself:

"mistake, inadvertence, surprise, or excusable neglect". *Teamsters,* 953 F.2d at 20 n. 3.

Landers offers only the assertion that her lack of notice from the Bankruptcy Court as to the entry of the November 8 Order constitutes excusable neglect for missing the ten-day appeal period on the motion to convert. The First Circuit has cited the definition of "excusable neglect" as "a failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform." *Eck v. Dodge Chemical Co. (In re Power Recovery Systems, Inc.),* 950 F.2d 798, 801 n. 8 (1st Cir.1991) (citing *In re Biddy,* 7 B.R. 50, 52 (Bankr.N.D.Ga.1980)). In addition to generally reviewing rulings on Rule 60(b) motions only for abuse of discretion, the First Circuit has mandated especially deferent review of determinations regarding the presence or absence of excusable neglect.

> The question of excusable neglect is by its very nature left to the discretion of the bankruptcy court whose decision should not be set aside unless the reviewing court, a district court or court of appeals, has a definite and firm conviction that the court below committed a clear error of judgment.

*Id.*

In this case, the Bankruptcy Court committed no such error; indeed, this Court holds a "definite and firm conviction" that the Bankruptcy Court's ruling as to excusable neglect was absolutely correct. Even assuming, *arguendo,* that said Court failed to notify Landers of the November 8 Order[9], the First Circuit has indicated that mere lack of notice does not constitute excusable neglect. *See Citibank, N.A. v. Roanca Realty, Inc. (In re Roanca Realty, Inc.),* 747 F.2d 816, 817 (1st Cir.1984). Indeed, courts throughout the country have so held with striking uniformity. *See, e.g., Stagecoach Utilities, Inc. v. County of Lyon (In re Stagecoach Utilities, Inc.),* 86 B.R. 229, 230 (9th Cir. BAP 1988); *Bardney v. U.S.,* 959 F.Supp. 515, 522–23 (N.D.Ill.1997); *Summer-*

---

9. Mayhew asserts that both he and the Trustee did receive notice of the entry of the November 8 Order. "[T]he fact that [others] received notice makes it less certain that [Landers]' lack of no-

tice was the result of a court error." *Summerwood Corp. v. Cado Systems Corp.,* 1987 WL 13085, *2 (E.D.Pa.1987).

*wood Corp. v. Cado Systems Corp.*, 1987 WL 13085, *2–3 (E.D.Pa.1987); *In re Futuronics Corp.*, 53 B.R. 126, 127 (Bankr.S.D.N.Y. 1985); *Billingsley v. Neary (In re Enerco, Inc.)*, 43 B.R. 412, 415 (Bankr.N.D.Tex.1984). Quite simply, "the 'I didn't receive notice' defense doesn't work in federal court." *Bardney*, 959 F.Supp. at 522.

Rather, it is the duty of an attorney to monitor the docket and to keep him or herself apprised of developments in a case. *See, e.g., In re Roanca Realty*, 747 F.2d at 817; *Bardney*, 959 F.Supp. at 523; *In re Futuronics Corp.*, 53 B.R. at 127; *In re Enerco, Inc.*, 43 B.R. at 415. An attorney may not simply sit back and rely on the court to keep him or her up to date; allowing attorneys to do so would not only invite abuses, but would remove the burden of vigilance from the advocates hired to pursue a client's interests. *Id.* Indeed, this principle is spelled out with extraordinary clarity in the Bankruptcy Rules themselves; Rule 9022(a) reads, in relevant part, "Lack of notice of the entry [of a judgment or order] does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 8002" [10] It could not be clearer, then, that the mere failure to receive notice does not and cannot constitute excusable neglect. Landers does not offer any explanation whatsoever for her counsel's failure to monitor the docket in this case; indeed, this inaction seems to be ignored in the hopes that it will be forgotten.

Thus, this Court concludes that the Bankruptcy Court did not abuse its discretion in denying Landers' Rule 60(b)(1) motion on the grounds that mere lack of notice does not constitute excusable neglect. *See Teamsters*, 953 F.2d at 19; *North Atlantic Fishing*, 153 B.R. at 610.

■ Landers, however, argues further that an exception to the normal rules of "excusable neglect" applies where a party's failure to act is due to reliance on affirmative, misleading actions of a court or its agent. Thus, she claims that her failure to appeal the November 8 Order was due not only to her lack of notice, but to the misleading statements by the Bankruptcy Court's law clerk on December 18–19, 1996 to her counsel, to the effect that the November 8 Order had not yet been entered on the docket and that the appeal period had not yet expired. To her counsel's dismay, Landers claims, the law clerk informed counsel on December 20 that in fact the November 8 Order had entered on December 8, and the appeal period had now expired.

■ To begin with, even the most generous reading of Landers' argument on the motion to vacate below reveals no mention of any official misleading acts at that time. It is, therefore, impossible to claim that the Bankruptcy Court abused its discretion on this issue, when the issue was not raised before that Court. Indeed, "[a] debtor may not bring new issues on appeal not properly presented to the bankruptcy judge.... This rule follows from the applicability of a general appellate review standard to appeals from the bankruptcy court." *Anderson v. McGowan (In re Anderson)*, 128 B.R. 850, 856 n. 7 (D.R.I.1991). Thus, this claim is not properly before this Court and need not be considered.

Nevertheless, the sheer outrageousness of this claim warrants a response. The docket clearly indicates that the November 8 Order was entered on the docket on that date, *not* on December 8, 1996, as Landers' counsel claims to have been told by the Bankruptcy Court's law clerk. Landers does not dispute Mayhew's assertions that he and the Trustee received notice of that entry. This Court rejects out of hand the claim that the November 8 Order did not enter until December 8.

Furthermore, the docket clearly indicates that Landers' motion to vacate was filed on December 10; indeed, the certificate of service affixed thereto reflects that date. The docket also clearly indicates that Mayhew's response to the motion to vacate was filed on December 20, 1996; indeed, the certificate of service affixed thereto reflects that date.

---

**10.** As noted *supra,* Rule 8002 allows a party to file various motions within the appeal period, or request an extension of the appeal period. It is undisputed that Landers did neither.

However, Landers has argued to this Court in her briefs and at the hearing of this matter that her lawyer's conversations with the Bankruptcy Court's law clerk, described *supra*, took place between December 18–20, 1996, and that she "accordingly" filed the motion to vacate. With apologies to H.G. Wells, this Court fails to understand precisely how Landers' counsel traveled back in time, to December 10, to file a motion to vacate based on the events which allegedly occurred eight to ten days later. The Court also fails to understand how Mayhew could have, on December 20, filed a response to a motion to vacate that was (according to Landers) filed on or after December 20.

Finally, a word is in order regarding the issue of "futility", *i.e.*, the merits of the underlying claim raised on the motion to vacate. *See Teamsters*, 953 F.2d at 20. As noted, Landers argued on the motion to vacate below, and in her briefs to this Court, that the Bankruptcy Court should have allowed her to prove the value of the items of personal property contained in the arbitrator's award, and thus to prove that Mayhew's unsecured debts exceeded $250,000. The Bankruptcy Court rejected this argument; whether that decision was correct, however, is irrelevant at this point because, as is undisputed, Landers dropped her claim to those items. Thus, the appeal of the January 8 Order denying the motion to vacate is moot, and was moot well before the hearing of the matter in this Court.

The reason that the appeal was not withdrawn, however, is clear: Landers hoped to convince this Court to revisit the issue of the interest rate, on which the Bankruptcy Court ruled against her in the November 8 Order. This is, indeed, the "substantive" argument

presented at the hearing of this appeal: that the interest rate on the arbitrator's award should be 12%, not 9%. However, as this Court has repeatedly noted, the November 8 Order on the interest rate was never appealed. Furthermore, the issue of the interest rate was not raised on the motion to vacate below, and indeed was not even raised, other than in passing, in Landers' briefs to this Court. It was not argued at all until the hearing of this appeal. As a result, it is not properly before this Court, *In re Anderson*, 128 B.R. at 856 n. 7, and the Court rejects in the strongest possible terms Landers' attempts to revisit the issue now.

Finally, Landers asserted at the hearing of this appeal (but not in her briefs to this Court) that the January 8 Order was improper because the Bankruptcy Court, rather than issue its own findings of fact and conclusions of law, simply referred to and incorporated Mayhew's brief in ruling on the motion to vacate. This argument is totally without merit.

█ Firstly, there is no rule or statute requiring a bankruptcy judge (or district judge, for that matter) to issue separate findings of fact and conclusions of law in ruling on a motion to vacate. Bankruptcy Rule 9033(a), which corresponds to 28 U.S.C. § 157(c)(1), does require a bankruptcy judge to file proposed findings of fact and conclusions of law; however, this rule relates only to "non-core" proceedings as referenced in 28 U.S.C. § 157.[11] Landers' motion to vacate the Bankruptcy Court's ruling on a motion to convert Mayhew's bankruptcy from Chapter 13 to Chapter 7 was a "core proceeding". *See* 28 U.S.C. § 157(b)(2).

Thus, the Bankruptcy Court was entitled to rule on the motion to vacate in the same

---

**11.** Rule 9033(a) states: "In non-core proceedings heard pursuant to 28 U.S.C. § 157(c)(1), the bankruptcy judge shall file proposed findings of fact and conclusions of law." The rule goes on to state procedures by which parties may object, as well as the standard of review by the district judge.

28 U.S.C. § 157(c)(1) states, "A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court,

and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."

28 U.S.C. § 157(b)(2) defines "core proceedings", and § 157(b)(1) allows bankruptcy judges to "hear and determine" such cases, and to "enter appropriate orders and judgments, subject to review under section 158 ..." by a district judge or a circuit court of appeals.

manner as would a district court; clearly, nothing requires a district court to issue findings of fact and conclusions of law on a motion to vacate. Rule 60 itself contains no such requirement. Landers, undoubtedly realizing this, suggests that the Bankruptcy Court is bound by Fed.R.Civ.P. 52 (applicable to bankruptcy cases through Bankr.R. 7052).[12] Rule 52(a) states: "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon ... and in granting or refusing interlocutory injunctions ..." shall do the same. By its own terms, this rule does not apply to motions to vacate. Lest there be any confusion about this, Rule 52(a) states, "[f]indings of fact and conclusions of law *are unnecessary on decisions of motions under Rule 12 or 56 or any other motion except as provided in subdivision (c) of this rule.*" (emphasis added). Rule 52(c) makes no reference to motions to vacate. Clearly, then, Rule 52 is inapposite and does not impose on the Bankruptcy Court the obligation which Landers posits.

Finally, beyond the lack of any specific rule or statute rendering the January 8 Order in any way defective, this Court finds nothing improper about the Bankruptcy Court's adoption and incorporation by reference of Mayhew's brief in opposition to the motion to vacate. It is true that the Seventh Circuit has criticized this practice, on the grounds that it casts doubt on judges' impartiality and leaves the parties unclear as to their precise reasoning. *See, e.g., DiLeo v. Ernst & Young,* 901 F.2d 624, 626 (7th Cir. 1990); *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 313–14 (7th Cir.1986); *In*

*the Matter of X–Cel, Inc.,* 776 F.2d 130, 132–34 (7th Cir.1985); *Scandia Down Corp. v. Euroquilt, Inc.,* 772 F.2d 1423, 1429 (7th Cir.1985). However, none of these cases has reversed a lower court's ruling solely for failure to state independent findings of fact and conclusions of law.

More importantly, the Seventh Circuit cases have not been cited by the First Circuit, and this Court is aware of no First Circuit case condemning the practice of deciding motions by reference to the arguments of the prevailing party, much less reversing a case on that basis.[13] Indeed, this practice is a common one which this Court itself follows from time to time. While, in a perfect world, every judicial ruling would be accompanied by a detailed opinion precisely explaining the basis of the ruling, the realities of crowded dockets and scarce resources require something short of perfection.

In the present case, the Bankruptcy Court adopted and incorporated the very specific arguments made by Mayhew on the motion to vacate below; it is thus sufficiently clear why that Court ruled as it did, and there is nothing to call that Court's impartiality into question. Thus, the Bankruptcy Court was under no duty to issue its own independent findings of fact and conclusions of law, and this Court will not reverse or remand the January 8 Order simply because that Court declined to do so.

As a result of the foregoing, the Bankruptcy Court's January 8 Order, denying Landers' motion to vacate that Court's November 8 Order, hereby is AFFIRMED.

---

12. Landers did not actually argue that Rule 52 applies to this appeal; indeed, as she did not brief this issue, she has offered no basis for her argument other than her conclusory statements at the hearing of this appeal. However, in making the same argument on C.A. No. 690L, regarding the Bankruptcy Court's September 23 Order, she did brief the issue. Thus, this Court will consider her arguments here.

13. In *In re Las Colinas, Inc.,* 426 F.2d 1005, 1008–09 (1st Cir.1970), the First Circuit held that, where a court is bound by Rule 52 to issue findings of fact and conclusions of law, the court generally should not adopt, verbatim, findings

proposed by the parties. In so holding, the First Circuit specifically cited the purposes of Rule 52, *i.e.,* to ensure that trial judges carefully think through their decisions, and to provide the parties and an appellate court with the precise bases for those decisions. *Id.* at 1008.

However, this case is clearly outside Rule 52. While the aforementioned policies are laudable, there is no indication that the First Circuit would extend the holding in *Las Colinas,* specifically based upon Rule 52, to cases which are outside that rule, and which involve no requirement that a court issue findings of fact and conclusions of law.

IV. C.A. No. 97–690L: The September 23 Order

■ C.A. No. 97–690L is Landers' appeal of the Bankruptcy Court's September 23 Order, sustaining Mayhew's objection to Landers' amended proof of claim. The details of this dispute are recounted *supra*, and need not be duplicated here; essentially, Mayhew objected to the use, in Landers' amended proof of claim, of a 12% interest rate on the cash portion of the arbitrator's award, rather than a 9% rate as set by the arbitrator. In the September 23 Order, the Bankruptcy Court ruled as follows:

> The Debtor's Objection to Landers' claim with regard to interest is SUSTAINED. We have ruled on this issue previously, *in this case*, and held that the interest rate set by the Arbitrator controls, and not the statutory interest rate under R.I. Gen. Laws § 9–21–10. See Order of November 8, 1996. Our prior (unappealed) ruling is the law of the case and the issue is *res judicata*.

> In the event of an appeal, and if it is determined that the interest issue is not *res judicata*, this Court adopts and incorporates herein by reference the Debtor's legal argument on the interest rate issue. See Debtor's Memorandum dated June 30, 1997, Docket # 86.

Landers, on appeal, contends that: (1) the Bankruptcy Court improperly adopted and incorporated Mayhew's brief, rather than stating independent findings of fact and conclusions of law; (2) the November 8 Order "was on appeal de novo and as such cannot form the basis of res judicata or law of the case"; and (3) the proper interest rate was 12%.

■ In this Court's view, the application of the "law of the case" doctrine was proper and is dispositive of this appeal. This doctrine holds that " 'a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in successive stages of the same litigation.' " *CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co.*, 839 F.Supp. 124, 125 (D.R.I.1993) (quoting 1B

*Moore's Federal Practice* ¶ 0.404[1] (2nd ed.1993)), *aff'd* 46 F.3d 1211 (1st Cir.1995); *see also Agostini v. Felton*, 521 U.S. 203, 117 S.Ct. 1997, 2017, 138 L.Ed.2d 391 (1997); *U.S. v. U.S. Smelting Refining & Mining Co.*, 339 U.S. 186, 198, 70 S.Ct. 537, 94 L.Ed. 750 (1950); *Wilson v. Chang*, 955 F.Supp. 18, 21 (D.R.I.1997). "The rule of the law of the case is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." *U.S. Smelting Refining & Mining Co.*, 339 U.S. at 198, 70 S.Ct. 537. However, "[t]he doctrine does not apply if the court is 'convinced that [its prior decision] is clearly erroneous and would work a manifest injustice.' " *Agostini*, 521 U.S. at ——, 117 S.Ct. at 2017 (quoting *Arizona v. California*, 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)) (change in original).

In the present case, the Bankruptcy Court clearly decided against Landers on the interest rate issue in the November 8 Order denying Landers' motion to convert. The parties submitted, to that Court, detailed arguments on the matter, and that Court clearly decided in favor of Mayhew, ruling that the 9% rate set by the arbitrator was proper.[14] Landers failed to appeal that ruling, and it became the "law of the case".

Landers insists, however, that because the November 8 Order was "on appeal de novo" to this Court, it could not form the basis for application of the "law of the case" doctrine. This statement is a blatant misrepresentation to this Court. The November 8 Order was *never* on appeal to this Court. What *was* on appeal was the January 8 Order denying Landers' motion to vacate, and that ruling is *not* reviewed under a *de novo* standard.

In any event, while there was a chance that the November 8 Order would be undone if this Court reversed the denial of the motion to vacate, this does not mean that the Bankruptcy Court erred in concluding that the November 8 Order was in fact the "law of the case". The Bankruptcy Court made its ruling on the interest rate issue; when that issue came up again, that Court was not required to revisit the issue or to suspend

14. The Bankruptcy Court adopted and incorporated Mayhew's brief on this issue. While, as discussed *supra*, this practice is not ideal, it is not improper. Mayhew's reasoning and argument on the interest rate issue was clear, and the Bankruptcy Court's adoption thereof is accordingly clear as well.

the entire case waiting for this Court to rule on the motion to vacate. Rather, the proper course was to conclude exactly as the Bankruptcy Court did: that its ruling on the interest rate issue, unappealed, was not to be disturbed absent a clear error and a manifest injustice. *See Agostini,* 521 U.S. ——, 117 S.Ct. at 2017.

There was no such error and injustice. Landers states that, "[i]n the present case, the Appellant has effectively been denied the ability to appeal and resolve an important jurisdictional issue of law, i.e. what interest rate controls arbitrator's [sic] awards *after* they have been confirmed by the Superior Court and become judgments of that Court." The unfortunate but plain truth is that no one has denied Landers anything in this case; she failed to appeal the November 8 Order, or to avail herself of any of the other options provided to her under Bankruptcy Rule 8002. Rules of procedure may be unforgiving, but they are crucial to the orderly administration of justice, and this Court is not empowered to set them aside at will. The law is clear that the burden falls squarely on the shoulders of an interested party (and that party's counsel) to take a timely appeal; Landers must now live with the consequences of her failure to do so.

Thus, the Bankruptcy Court's conclusion was absolutely correct. As a result, this Court need not address Landers' remaining contentions on this appeal.[15]

The Bankruptcy Court's September 23 Order, sustaining Mayhew's objection to Landers' amended proof of claim hereby is AFFIRMED.

### V. Conclusion

As a result of the foregoing, the Bankruptcy Court's Orders of November 8, 1996, and September 23, 1997, are AFFIRMED.

It is so ordered.

---

**15.** The Court need not address the claim (identical to that rejected in C.A. No. 97–136L) that the Bankruptcy Court improperly adopted and incorporated Mayhew's brief in the September 23 Order. The Bankruptcy Court stated that the November 8 Order was the "law of the case" or res judicata; it went on to state that *only if* this Court rejected that conclusion would Mayhew's brief on the merits of the interest rate issue be adopted and incorporated.