**In re SHEPHERDS HILL DEVELOPMENT CO., LLC, Debtor.**

**Anthony F. Balzotti, Dawn Balzotti, Michael Balzotti, Thomas Iarrobino, Ann Burgess and Edmond J. Ford, Trustee, Plaintiffs/Appellees,**

v.

**RAD Investments, LLC and Robert A. DiIanni, Defendants/Appellants.**

BAP Nos. 04–011, 04–012.
Bankruptcy No. 99–11087–JMD.
Adversary Proceeding No. 99–01087.

United States Bankruptcy Appellate Panel of the First Circuit.

Nov. 4, 2004.

---

**10.** *See Barnett v. Edwards (In re Edwards),* 214 B.R. 613, 620 (9th Cir. BAP 1997).

Steven J. Brooks, Susan M. Henderson, Deutsch, Williams, Brooks, DeRensis & Holland, Boston, MA, on brief for the Appellants.

William S. Gannon, Manchester, NH, on brief for the Appellees.

Marc W. McDonald, Manchester, NH, on brief for Appellee, Edmond J. Ford, Trustee.

Before LAMOUTTE, VOTOLATO, and HAINES, U.S. Bankruptcy Appellate Panel Judges.

VOTOLATO, Bankruptcy Judge.

RAD Investments, LLC and Robert A. DiIanni ("Defendants") appeal from the March 18, 2004, orders of the United States Bankruptcy Court for the District of New Hampshire: (1) denying their request for an extension of time to file an appeal from a final default judgment; and (2) denying their Motion for Relief from Default Judgment pursuant to Bankruptcy Rule 9024 and Fed.R.Civ.P. 60(b) ("Rule 60(b)").

## BACKGROUND[1]

On February 12, 2004, after more than three years of delay, the bankruptcy court entered a Final Default Judgment against the Defendants due to their failure to answer the complaint in this adversary proceeding. The Defendants blame their failure to respond on "a series of misunderstandings ... which led to the entry of the default judgment." *See* Defendants' Brief at 7. Since this litigation involves the Plaintiffs' efforts regarding service on and notice to the Defendants, as well as a series of defaults, missed deadlines, and excuses as to why the Defendants repeatedly failed to respond to the Plaintiffs' pleadings or to appear at scheduled hearings, a review of the procedural travel of this case is necessary.

### A. Commencement of the Adversary Proceeding

On or about June 30, 2000, the appellees/majority shareholders in the debtor-corporations ("Plaintiffs"), filed an adver-

---

1. The Panel apologizes for the profuse usage of dates and chronology herein which makes the reading of this opinion laborious and mind numbing, but given the travel of this case, it is necessary.

sary proceeding against the Defendants seeking damages for breach of contract regarding a purchase and sale agreement.[2] According to the Plaintiffs, the Defendants were personally served with the original Summons and Complaint at their business address in Maynard, Massachusetts. However, on September 12, 2000, the bankruptcy court issued a new Summons requiring the Defendants to answer the complaint within thirty days and to appear at a pretrial conference on November 8, 2000.[3]

Also, according to the Plaintiffs, Sheara F. Friend, Esq., an attorney purportedly representing the Defendants, requested an extension of time to respond to the complaint, and the Plaintiffs agreed to allow her 60 days (rather than the standard 30 days) to answer. The Plaintiffs say that Friend also promised to accept service of the Summons and Complaint, but that she reneged on that agreement. Subsequent attempts to personally serve the Defendants were unsuccessful as they could no longer be located in Massachusetts,[4] and the bankruptcy court ultimately approved an alternative form of service, by publication in *The Boston Globe* from December 13, 2000, through December 19, 2000, and by service upon Attorney Friend. However, on December 13, 2000, Friend notified the bankruptcy court that she did not represent the Defendants and could not accept service on their behalf. The Plaintiffs contend that although Friend did not file a formal entry of appearance, she clearly held herself out as

counsel for the Defendants, admitted at her deposition that she consulted with the Defendants, worked to "assemble a [defense] team," and requested an extension of time within which to answer the complaint on the Defendants' behalf. Based on her extensive participation on behalf of the Defendants, and because of the Plaintiffs' reliance induced by her conduct, we conclude that Friend was de facto counsel for the Defendants.

### B. First Request for Entry of Default Judgment

Despite the extension of time obtained by Friend, the Defendants failed to answer the complaint and the bankruptcy court entered an Order of Default on January 24, 2001. On February 7, 2001, the Plaintiffs filed a Motion for Default Judgment and a hearing was scheduled. On February 21, 2001, more than 8 months after the commencement of this adversary proceeding, Norman Novinsky, Esq. (a member of the legal team assembled by Attorney Friend), filed the Defendants' first pleading in this case, an Objection to Motion for Default Judgment. On March 12, 2001, the Defendants filed a Motion to Strike the Order of Default, to which the Plaintiffs objected.

### C. Dismissal and Reinstatement of Adversary Proceeding

At that juncture, the bankruptcy court, concerned over its jurisdiction, sua sponte entered an Order to Show Cause why the

---

**2.** The complaint was subsequently amended to add a fraud count against the Defendants. *See* App. at 47–51.

**3.** Although service of the original Summons was made on the Defendants on August 2, 2000, for some reason the Plaintiffs requested the bankruptcy court to issue a new Alias Summons and Notice of Pretrial Conference, which it did on September 12, 2000. Unfor-

tunately, service of the new Summons would prove to be difficult.

**4.** The Defendants later admitted that they stopped doing business at the Massachusetts address in September 2000, but never notified the Plaintiffs or the bankruptcy court of their whereabouts after they vacated the premises.

default should not be vacated and the adversary complaint dismissed for lack of jurisdiction. Briefing and oral argument did not alleviate the bankruptcy court's concerns, and it dismissed the proceeding, sua sponte, on May 15, 2001. On appeal, the U.S. District Court held that the bankruptcy court did have subject matter jurisdiction, vacated the dismissal order, and remanded to the bankruptcy court for further proceedings. The Defendants appealed the district court's decision to the First Circuit Court of Appeals, but that appeal was dismissed upon the parties' stipulation, which became a final order on January 23, 2003.

### D. Renewed Request for Entry of Default Judgment

With the adversary proceeding reinstated, the bankruptcy court scheduled a pretrial hearing for April 2, 2003, and the Plaintiffs renewed their Motion for Default Judgment. Again, the Defendants failed to appear, and the pretrial conference was continued to May 14, 2003. At that time, the Defendants were not represented, Norman Novinsky having withdrawn as counsel on March 13, 2003. Successor counsel, the law firm of Deutsch Williams Brooks DeRensis & Holland ("Deutsch Williams") filed an appearance on May 9, 2003.

On June 3, 2003, the Defendants filed an Amended Motion to Strike the Order of Default, the Plaintiffs objected, and an evidentiary hearing on the motion was scheduled for November 3, 2003. On the morning of the hearing the parties announced an agreement which was read into the record, and an order entered stating that the Plaintiffs had withdrawn their objection to the Amended Motion to Strike, that the Defendants agreed to waive all Fed. R.Civ.P. 12(b) defenses except Rule 12(b)(6), and that the Defendants were required to file an answer to the complaint on or before December 3, 2003.

One week before the answer deadline, Deutsch Williams filed a motion for leave to withdraw as counsel for the Defendants, with a copy via Federal Express to Mr. DiLanni, and the motion was granted on December 2, 2003. In a letter to the bankruptcy court dated December 3, 2003, apparently unaware that their withdrawal had already been approved, Deutsch Williams wrote:

> The firm of Deutsch Williams Brooks DeRensis & Holland, P.C. ("the Firm") presently has a pending motion to withdraw as counsel for the Defendants, RAD Investments, Inc. and Robert A. DiIanni in the above-referenced adversary proceeding. Because we are in the process of requesting to withdraw, the Firm did not feel it appropriate to file an Answer on behalf of the Defendants, or to request an extension of time for the filing of the Answer in our motion to withdraw. The deadline imposed by the Court for the filing of the answer expires today.

> Should your Honor be inclined to grant the motion to withdraw, the Firm wanted to make it clear to the Court, the Defendants, and counsel of record that no extension was sought, and no Answer will be filed on behalf of the Defendants by the Firm prior to the deadline imposed by the Court.

> A copy of this letter is being provided to counsel of record and to the Defendants, and the original of this letter is being forwarded to Your Honor by first class mail for filing in the court file.

Supp.App. at 1–2.

### E. Request for Entry of Final Default Judgment

The Defendants failed to file an answer to the complaint by the December 3, 2003,

deadline, and on December 22, 2003, the Plaintiffs filed a Motion for Entry of Final Default Judgment, pursuant to Fed. R.Civ.P. 55. On December 23, 2003, the bankruptcy court directed the clerk to enter an order of default against the Defendants,[5] and to schedule a final hearing on February 11, 2004, on the Motion for Entry of Final Default Judgment.

### 1. Service of Notice of Default Order and Final Judgment Hearing

Said order required notice of the default order to be made upon the Defendants by: (1) mailing a copy of the Notice of Default Order and Final Judgment Hearing to the Defendants at their addresses in Massachusetts and Switzerland; and (2) by publication in *The Boston Globe.* On January 23, 2004, the Plaintiffs served the Defendants by first class mail at their Massachusetts address, at Mr. DiIanni's address in Switzerland, and on their most recent former counsel, Deutsch Williams. Also, as required by the order, the notice was published in *The Boston Globe* on January 11, 2004. *See* App. at 58–60.

### 2. Entry of Final Default Judgment

On February 11, 2004, the bankruptcy court held a hearing on the Motion for Entry of Default Judgment. The Defen-

dants did not attend.[6] On February 12,-2004, the bankruptcy court entered Final Default Judgment against the Defendants, and copies of the Final Default Judgment were mailed to the Defendants at their Massachusetts address. Defendant DiIanni argued below that he did not learn of the default judgment until his wife telephoned from Switzerland to inform him that she had received the default judgment, but that the 10–day appeal period had expired.[7] *See* Defendants' Brief at 4.

### F. Efforts to Seek Relief from Final Default Judgment

On March 15, 2004, having missed the appeal deadline for the Final Default Judgment, the Defendants filed a Motion for an Extension of Time to file a notice of appeal. They also filed a Motion for Relief from Default Judgment, pursuant to Bankruptcy Rule 9024 and Fed.R.Civ.P. 60(b)(1).[8] The ground for relief stated in both motions was "excusable neglect." On that same day, more than four years after the adversary complaint was filed, the Defendants finally filed an Answer to the Complaint.

On March 18, 2004, the bankruptcy court denied both motions. As for the Motion to Extend Time to Appeal, the bankruptcy court held that the request was untimely, as the motion was filed 32 days after the entry of the Final Default

5. At the Plaintiffs' request, that order was superseded by an order dated January 27, 2004, which changed the manner of notice to be given to Defendants.

6. Defendant DiIanni claims that although notice of the hearing was sent to his home in Switzerland, *his wife did not forward anything to him*, nor did she inform him of the hearing date until that morning. Although DiIanni was in Boston on the morning of the hearing, he did not attempt to attend the hearing in Manchester.

7. This is the same reason given by DiIanni as to why he did not attend the hearing on the motion for entry of default judgment. It appears from the record that DiIanni's wife received timely notice in Switzerland of both the hearing and the entry of default judgment, and there is no suggestion anywhere in the record as to why she did not get word to her husband in time to respond.

8. Both motions were accompanied by an unsworn "Affidavit of Robert A. DiIanni." *See* App. at 82–85, 116–119.

Judgment and that "any request for an extension must be made within the original 10 day appeal period." In denying the request for relief from the default judgment, the bankruptcy judge found that there were no grounds for relief under Rule 60(b). On March 26, 2004, the Defendants appealed both orders.

## JURISDICTION

■ A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An interlocutory order " 'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy appellate panel should determine its jurisdiction before proceeding to the merits, even if not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998).

■ An order denying a motion for extension of time to file a notice of appeal pursuant to Bankruptcy Rule 8002(c)(2) is a final order. *See Belfance v. Black River Petroleum (In re Hess)*, 209 B.R. 79, 80 (6th Cir. BAP 1997). Similarly, an order denying relief from judgment under Rule 60(b) is generally considered a final appealable order. *See United States v. Sterling Consulting Corp. (In re Indian Motocycle Co., Inc.)*, 289 B.R. 269, 276 (1st Cir. BAP 2003). In this appeal, the Panel has jurisdiction.

## STANDARD OF REVIEW

■ Appellate courts reviewing decisions and orders of the bankruptcy court generally apply the "clearly erroneous" standard to findings of fact and *de novo* review to conclusions of law. *See T I Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719–20, n. 8 (1st Cir. 1994).

■ Generally, a bankruptcy court's denial of a motion for extension of time to file a notice of appeal is reviewed for abuse of discretion. *See In re Hess*, 209 B.R. at 80 (citation omitted). However, whether a party has demonstrated "excusable neglect" for purposes of Bankruptcy Rule 8002(c)(2) is a question of law, which is subject to *de novo* review, *see id.*, while a bankruptcy court's denial of a motion for relief from default judgment is reviewed for an abuse of discretion. *See Banco Bilbao Vizcaya v. Family Rests., Inc. (In re The Home Rests., Inc.)*, 285 F.3d 111, 113 (1st Cir.2002); *Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co., Inc.*, 953 F.2d 17, 19 (1st Cir.1992).

> Judicial discretion is necessarily broad—but it is not absolute. Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.

*Colon v. Rivera (In re Colon)*, 265 B.R. 639 (1st Cir. BAP 2001) (citations omitted).

## DISCUSSION

I. **Whether the Bankruptcy Court Abused Its Discretion in Denying the Defendants' Motion to Extend Time to Appeal.**

■ Bankruptcy Rule 8002(a) provides that a notice of appeal shall be filed within

10 days of the entry of the judgment or order. Fed. R. Bankr.P. 8002(a). The timely filing of a notice of appeal is mandatory and jurisdictional. *See Johnson v. Teamsters Local 559*, 102 F.3d 21, 28 (1st Cir.1996) (citing *Acevedo–Villalobos v. Hernandez*, 22 F.3d 384, 387 (1st Cir.1994), *cert. denied*, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994)). Therefore, if an appeal is not taken or otherwise preserved within the 10–day appeal period, the appeal will usually fail. *See Yamaha Motor Corp. v. Perry Hollow Mgmt. Co., Inc. (In re Perry Hollow Mgmt. Co., Inc.)*, 297 F.3d 34, 38 (1st Cir.2002).

 Under certain circumstances, however, the bankruptcy court may extend the time for filing a notice of appeal, *see* Fed. R. Bankr.P. 8002(c)(2), but such requests "must be made by a written motion filed before the time for filing a notice of appeal has expired, except that such a motion filed *not later than 20 days* after the expiration of the time for filing a notice of appeal may be granted upon a showing of *excusable neglect.*" *Id.* (emphasis added). Bankruptcy courts do not have authority to grant extensions for filing a notice of appeal after the 20–day "excusable neglect" period has run. *See id.*

### A. Timeliness

The Final Default Judgment was entered on February 12, 2004, so the Defendants had until February 22, 2004, to file a notice of appeal. *See* Fed. R. Bankr.P.

8002(a). However, since February 22nd was a Sunday, the deadline was actually Monday, February 23, 2004. *See* Fed. R. Bankr.P. 9006(a).[9] The Defendants did not file their appeal within that (extended) time frame. Thereafter, the only option available to the Defendants was to (a) file their Motion to Extend Time to Appeal within 20 days of the appeal deadline and (2) make a showing of excusable neglect.[10]

The appeal deadline expired on Monday, February 23, 2004, and 20 days therefrom was Sunday, March 14, 2004. Since Bankruptcy Rule 9006 governs the computation of the time periods proscribed by Rule 8002(c)(2), the Defendants' filing of the Motion to Extend Time to Appeal on the 21st day was timely.

### B. Excusable Neglect

 Having ruled that the Motion to Extend Time to Appeal was timely filed, the next question is whether the Defendants made the requisite showing of "excusable neglect."

 Generally, the issue of excusable neglect is left to the discretion of the bankruptcy court, whose ruling should not be disturbed unless the reviewing court has a definite and firm conviction that the court below committed a clear error of judgment. *See generally Yarinsky v. Saratoga Springs Plastic Surgery, PC (In re Saratoga Springs Plastic Surgery, PC)*, 310 B.R. 493, 498 (N.D.N.Y.2004) ("Whether

---

9. Bankruptcy Rule 9006(a) provides: "In computing any period of time prescribed or allowed by these rules ... the last day of the period so computed shall be included, unless it is a Saturday, [or] a Sunday ..., in which event the period runs until the end of the next day which is not one of the aforementioned days." Fed. R. Bankr.P. 9006(a).

10. In denying the Motion to Extend Time to Appeal, the bankruptcy court stated that "any request for an extension must take place with-

in the original 10 day appeal period." That statement is incorrect. Even if an appealing party does not request an extension of time until after the expiration of the 10–day appeal period, the bankruptcy court may nonetheless grant an extension based upon excusable neglect if the request for such an extension is filed within 20 days after the expiration of the initial appeal period. *See* Fed. R. Bankr.P. 8002(c)(2).

any particular showing constitutes excusable neglect rests upon judicial discretion").

The standard for determining excusable neglect was established by the United States Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).[11] As *Pioneer* instructs, the "excusable neglect" determination "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489 (footnote and citations omitted). Factors to consider include: the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Id.* Most courts addressing the issue in the context of Bankruptcy Rule 8002(c) have focused on the reason for the delay and the defendants' good faith (or lack thereof).

### 1. Reason for the Delay

■ Defendant DiIanni claims that he did not receive notice of the entry of the Final Default Judgment until after the 10–day appeal period had expired. Assuming this to be the case, the First Circuit has held that "mere lack of notice does not constitute excusable neglect." *See Citibank, N.A. v. Roanca Realty, Inc. (In re Roanca Realty, Inc.)*, 747 F.2d 816, 817 (1st Cir.1984), and whether the appellant had notice of the order does not affect its validity, nor the date on which the notice of appeal should have been filed. *See* Fed. R. Bankr.P. 9022 ("Lack of notice of entry [of order] does not affect the time to appeal or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 8002"); *see also Twins Roller Corp. v. Roxy Roller Rink Joint Venture*, 70 B.R. 308, 311 (S.D.N.Y.1987) (party's receipt of notice of entry of the order after expiration of the time allowed to file notice of appeal did not constitute excusable neglect). As one court put it: "Quite simply, the 'I didn't receive notice' defense doesn't work in federal court." *In re Mayhew*, 223 B.R. 849, 856 (D.R.I.1998). Moreover, it is the litigant's duty to monitor the case docket for orders and judgments entered. *See Warrick v. Birdsell (In re Warrick)*, 278 B.R. 182 (9th Cir. BAP 2002) ("It is well settled that failure to receive notice of entry of judgment or order is not an excuse for an untimely appeal because it is the party's affirmative duty to monitor the dockets"); *see also Witty v. Dukakis*, 3 F.3d 517, 520 (1st Cir.1993) ("Parties to an ongoing case have an independent obligation to monitor all developments in the case and cannot rely on the clerk's office to do their homework for them"). "It could not be clearer, then, that the mere failure to receive notice does not and cannot constitute excusable neglect." *In re Mayhew*, 223 B.R. at 856. In this case the Defendants presumptively have received all notices,[12] and repeatedly failed to heed them.

■ Also, the Defendants failed to provide the bankruptcy court with correct addresses to which the court should direct notices. *See* N.H. Local Bankruptcy Rule 9010–1. Pursuant to Local Rule 9010–1, any attorney or pro se party who wishes to

---

11. Although in *Pioneer* the Court was considering the excusable neglect provision of Bankruptcy Rule 9006(b)(1), courts generally apply the *Pioneer* standard of excusable neglect for Bankruptcy Rule 8002(c) purposes as well. *See, e.g., Hess*, 209 B.R. at 80.

12. There is nary a hint in the record below that the Defendants have rebutted the presumption that all notices to them were proper and reasonable.

receive copies of bankruptcy court notices must file with the bankruptcy court an appearance that sets forth his/her name, address, telephone number and relationship to the estate. Notwithstanding the Local Rule, the Defendants failed to notify the bankruptcy court of their whereabouts when they vacated the Massachusetts premises in December 2000, or at any time thereafter. Parties may not avail themselves of the claim of lack of service when they caused the condition of which they complain. Therefore, they are estopped from arguing about notice as to any of these proceedings.

### 2. Good Faith

There are solid grounds in this case for us to question the good faith of the Defendants, not the least of which is the Bankruptcy Judge's perceptive observation, "It appears that the Defendants' failure to timely appeal the Final Default Judgment was part of an ongoing pattern of obstruction and delay." Their egregious habit of refusing to answer, their chronic excuses regarding notices, lack of representation, and alleged lack of information about the case, were all of their own doing, not attributable to anyone else, and were clearly calculated to obstruct and delay. *See Jacobson v. Official Committee of Unsecured Creditors (In re Mahoney Hawkes)*, 272 B.R. 19 (1st Cir. BAP 2002) (inaction which is the result of calculation rather than neglect does not amount to excusable neglect).

The record shows that the Defendants received notice of the Final Default Judgment hearing by first class mail and by publication in *The Boston Globe*. Mr. DiIanni admits that he had actual knowledge of the February 11, 2004, hearing but did not attend, notwithstanding that he knew or should have known that a default judgment would likely enter against him. The record in this case is full of indicia that the Defendants were acting by design throughout these proceedings, and that they are not the unwitting victims of multiple innocent misfortune.

### II. Whether the Bankruptcy Court Abused Its Discretion in Denying Defendants' Request for Relief from Final Default Judgment.

Motions brought under Rule 60(b) are committed to the trial court's discretion, and the Panel should review the denial of a Rule 60(b) motion for abuse of discretion with "the understanding that relief under Rule 60(b) is extraordinary in nature and that motions invoking that rule should be granted sparingly." *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir.2002).

Rule 60(b), which is made applicable to bankruptcy proceedings pursuant to Bankruptcy Rule 9024, states: "On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1). To prevail on a Rule 60(b) motion, the party seeking to have the judgment vacated bears the burden of showing both reasonable grounds for the default, and the existence of a meritorious defense on the merits of the case. *United States v. Proceeds of Sale of 3,888 Pounds Atlantic Sea Scallops*, 857 F.2d 46, 48 (1st Cir.1988). The moving party must also demonstrate the existence of certain prerequisites, including: (1) timeliness, (2) exceptional circumstances, and (3) the absence of unfair prejudice to the opposing party. *See Superline Transp. Co.*, 953 F.2d at 20. In the context of Rule 60(b)(1), the "exceptional circumstances" to which the First Circuit refers are enumerated in the rule itself: "mistake, inadvertence, surprise, or excusable neglect." *Id.* at 20 n. 3.

In determining excusable neglect, the Panel applies the same five-point *Pioneer* test discussed above at Section I, subparagraph B, on page 12, with respect to the Motion to Extend Time to Appeal.[13] As noted above, the *Pioneer* Court recognized that the contours of the "excusable neglect" analysis are often defined by the context of the procedural lapse. *See Neal Mitchell Assocs. v. Braunstein (In re Lambeth Corp.),* 227 B.R. 1, 8 (1st Cir. BAP 1998).

■ The Defendants argue that they were entitled to relief from the Final Default Judgment for excusable neglect because: (1) they mistakenly believed that the adversary proceeding was stayed pending resolution of a criminal proceeding against them; and (2) they did not receive adequate notice of the Final Default Judgment hearing, due to Mr. DiIanni's wife's delay in advising him of notices received in Switzerland.

## A. Mistaken Belief that Adversary Proceeding Was Stayed

According to the Defendants, at the time Deutsch Williams withdrew as counsel in this adversary proceeding, the firm still represented them in a pending criminal matter, and that Deutsch Williams advised them that the U.S. Attorney's Office had agreed that all civil actions would be stayed pending a resolution of that criminal proceeding. Mr. DiIanni says that he understood that to mean that the adversary proceeding was stayed. Thus, unrepresented in the bankruptcy case and believing the adversary proceeding to be stayed, he did not file an answer to the complaint.

■ This argument is as disingenuous as it is meritless. First, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer,* 507 U.S. at 392, 113 S.Ct. 1489. Therefore, neither mistake nor carelessness on the part of a litigant or his attorney provide grounds for relief under Rule 60(b)(1). *See Ben Sager Chem. Int'l, Inc. v. E. Targosz & Co.,* 560 F.2d 805, 809 (7th Cir.1977). Even if it were established that the Defendants believed mistakenly that the adversary proceeding was stayed, that is not a cognizable excuse under Rule 60.

Moreover, in their motion to withdraw and in their correspondence dated December 3, 2003, addressed to the bankruptcy court (with a copy to DiIanni), Deutsch Williams made it crystal clear that the Defendants were required to file an answer to the complaint that same day, and that Deutsch Williams would not be filing either an answer or a request for extension of time on behalf of the Defendants. At the time Deutsch Williams made these statements, the firm still considered itself counsel of record for the Defendants,[14] and it still represent DiIanni in his criminal matters. Based on this correspondence, DiIanni is charged with knowledge that the adversary proceeding was not stayed, and we therefore conclude that the bankruptcy judge was correct in his ruling that

---

13. While the *Pioneer* Court's analysis focused on Bankruptcy Rule 9006, its rationale is equally applicable to several other rules, including Rule 60(b). *See Neal Mitchell Assocs. v. Braunstein (In re Lambeth Corp.),* 227 B.R. 1, 8 n. 12 (1st Cir. BAP 1998); *see also Salem Five Cents Savings Bank v. Tardugno (In re Tardugno),* 241 B.R. 777 (1st Cir. BAP 1999).

14. Although Deutsch Williams' letter to the bankruptcy judge was dated the day after its motion to withdraw was granted, it is clear that Deutsch Williams was unaware its motion had been granted, i.e., "should the court be inclined to grant the motion to withdraw, the Firm wanted to make it clear ... that no extension was sought, and no Answer will be filed...."

the Defendants had not shown excusable neglect in failing to timely answer the complaint.

### B. Adequacy of the Notices

■ Mr. DiIanni also claims that he is entitled to Rule 60(b) relief because he did not learn of the hearing on the Final Default Judgment until the morning of the hearing, and then did not receive notice of the entry of the Final Default Judgment until after the appeal period had expired.

First, given the circumstances, the Panel is satisfied that reasonable efforts were made to provide the Defendants with adequate notice of the Final Default Judgment hearing. The Plaintiffs served the Notice of Default Order and Final Judgment Hearing on the Defendants by first class mail to their Massachusetts address, to Mr. DiIanni's address in Switzerland (where Mr. DiIanni admits his wife received it), and to the offices of their counsel, Deutsch Williams. Moreover, the Plaintiffs published the Notice of Default Order and Final Judgment Hearing in *The Boston Globe*. DiIanni was living in the area of the *Boston Globe's* general circulation at that time, and although she was slow getting to him, DiIanni's wife provided him with actual knowledge of the Final Default Judgment hearing (at least) on the morning of the hearing.

Moreover, the Defendants' reliance on Rule 60(b) is misplaced where lack of notice is the reason for the late appeal. Although its terms are fairly broad, Rule 60(b) does not give courts unlimited authority to fashion whatever relief they deem appropriate, i.e., the Defendants cannot use a Rule 60(b) motion as a substitute for a timely appeal. *See Latham v. Wells Fargo Bank, N.A.*, 987 F.2d 1199 (5th Cir.1993); Charles A. Wright, Arthur R. Miller & Mary K. Kane, 11 *Federal Practice & Procedure* § 2858. Finally, as not-

ed in the Rule 8002(c)(2) discussion at Section I, assuming arguendo that the Defendants did not receive notice of the entry of the Final Default Judgment within the 10–day appeal period, mere lack of notice does not justify Rule 60(b) relief. *See* James W. Moore, 12 *Moore's Federal Practice* § 60.48[6][c] (3d ed.1997).

While no single factor is determinative of the Rule 60(b)(1) issue, the aggregate of relevant factors confirms that the bankruptcy judge did not abuse his discretion in denying the Motion for Relief From Final Default Judgment under Rule 60(b)(1).

### CONCLUSION

For the reasons set forth above, and based on the totality of circumstances reflected throughout the record, the arguments of the chronically tardy Defendants are all without merit, they have been thoroughly overindulged throughout these proceedings, and the orders of the bankruptcy court are AFFIRMED.